UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-84 (PJS/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **GOVERNMENT'S SENTENCING** |
| | )   **POSITION** |
| NICHOLAS JAMES BELL, | ) |
| | ) |
| Defendant. | ) |

The United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota and Assistant United States Attorney Allison K. Ethen, submits the government's position on sentencing. The government respectfully requests the Court adopt the United States Sentencing Guidelines calculations as set forth in the Presentence Investigation Report and impose a sentence at the bottom of the resulting range of 21 months' imprisonment.

## BELL'S CRIMINAL CONDUCT

In February 2022, law enforcement began investigating Mr. Bell based on a shipment of illegal firearms parts which had been mailed to his home from a company in China. (PSR ¶ 9.) The illegal parts consisted of small mechanisms called "auto sears," or "switches," which can be installed on the backside of a firearm, typically a Glock, to convert it into a fully automatic weapon. *Id.* When it was intercepted, Customs and Border Protection found 21 auto sear parts in Mr. Bell's package. *Id.*

1

Through the investigation, investigators learned that Mr. Bell had received a total of five shipments from the same company in China between January and March 2022. (PSR ¶ 9.) Each of the packages was addressed to Mr. Bell and had been declared to Customs and Border Protection as some type of bicycle or mechanical part to evade detection. *Id.*

In April 2022, local law enforcement conducted a traffic stop of Mr. Bell and during a subsequent search of his vehicle located a Glock 19x handgun with a switch installed on the back. (PSR ¶ 10.) The Glock 19x also contained an extended magazine capable of holding 20 rounds. *Id.* A second even larger capacity extended magazine (50 rounds) was also found in Mr. Bell's vehicle along with seven additional switches. (Plea Agreement, Dkt. 30 at 2.) During a subsequent search of Mr. Bell's home, packaging consistent with the illegal mailers from China, an additional switch, firearm parts, and ammunition were located. (PSR ¶ 11.)

In a statement to investigators, Mr. Bell initially admitted that he "kind of" knew what a switch was. (PSR ¶ 13.) He then stated he was not being honest, and that he knew what a switch was, but that he had no knowledge that it was illegal and that he had no knowledge of what the intercepted illegal mailer from China contained. *Id.* However, in a subsequent jail call, Mr. Bell made clear that he not only knew what a switch was, but that it was illegal; stating that he did not have time to "pop the back plate" when police stopped him. (PSR ¶ 12.)[1]

---

[1] A Glock switch consists of three parts: a back plate, a leg, and a pin. The back plate is the portion of the switch which holds the rest of the mechanisms in place on the firearm.

# ARGUMENT

## I. THE UNITED STATES SENTENCING GUIDELINES

The government agrees with the PSR's calculation of the advisory Sentencing Guidelines Range in this case. The PSR calculated Mr. Bell's total offense level as 15 and his criminal history category as II. (PSR ¶¶ 28 & 38.) This represents a slight deviation from the calculations by the parties as set forth in the plea agreement, which contemplated a criminal history category of I. (Dkt. 30 ¶ 7(e).) Upon review of the criminal history cited in the PSR, the government agrees that a criminal history category II is correct and asks the Court to adopt a Sentencing Guidelines Range of 21-27 months. (PSR ¶¶ 69.)

## II. THE APPROPRIATE SENTENCE UNDER § 3553(A).

A sentence of 21 months' imprisonment represents a sentence which is sufficient, but no greater than necessary to accomplish the goals set forth in 18 U.S.C. § 3553(A). This sentence is within the Guidelines range under both the calculations in the PSR and the calculations as originally contemplated by the Plea Agreement. An analysis of the § 3553(a) factors shows that there are mitigating factors in this case. However, because there are also numerous aggravating factors, the government respectfully submits that the mitigating factors cannot support a downward variance from the guidelines range.

The nature and circumstances of Mr. Bell's possession of this machinegun are serious. As the PSR indicates, Mr. Bell had seven additional switches with him when he was arrested. Additionally, Customs and Border Protection records and the evidence located in his home indicate that Mr. Bell has possessed many more switches as well. Each of those switches is technically defined as a firearm (PSR ¶ 88,) though more practically,

each of those switches represents a firearm that can be converted to a fully automatic weapon.

By the time law enforcement searched Mr. Bell's residence, they were only able to recover one additional switch and one portion of a firearm (a 3D printed frame). (PSR ¶ 11.) It is not clear where the remaining switches are – whether they were given or sold to other people. It is also not clear what Mr. Bell intended to do with the remaining seven switches in his vehicle.

As to Mr. Bell's history and characteristics, the PSR includes a number of facts that reflect positively on Mr. Bell. He comes from a strong family environment and appears to have continued familial support through his adult life. He also graduated from high school, obtained a technical degree, and maintained steady employment. But commendable personal characteristics cannot be sufficient to permit Mr. Bell to avoid the consequences of his choice in this case, to intentionally import, install, and possess a highly dangerous weapon.

Moreover, the government is troubled by Mr. Bell's continued minimization of his criminal conduct. (PSR ¶¶ 16-17.) Mr. Bell's statements to probation are not compatible with the facts of the case. Mr. Bell claims he attempted to purchase auto sears but that he "got scammed" and received only nuts and bolts. However, the records show that Mr. Bell ordered packages from the same dealer in China on five separate occasions. If he had really received only "nuts and bolts" each time, why would he continue to attempt to purchase auto sears from the same faulty company over and over again? Additionally, this does not negate the fact that Customs and Border Protection opened one of the intercepted packages

and observed the fact that these were not just "nuts and bolts;" the parts were in fact auto sears. Likewise, it does not make sense that despite ordering auto sears and having an auto sear installed on his own firearm, Mr. Bell just coincidentally found seven additional auto sears in a vehicle which was registered to him. These statements are simply not supported by the investigation, or the facts laid out in the Plea Agreement and PSR. The government intends to move for the additional 1-point reduction at sentencing pursuant to U.S.S.G. § 3E1.1, however, it respectfully requests the Court consider these statements under the § 3553(a) factors in determining that a guidelines sentence is appropriate.

The sentencing factors with respect to specific and general deterrence call for a guidelines sentence in these circumstances. To the extent Mr. Bell will argue that being prosecuted for this offense alone is sufficient to deter his possession of machineguns, the government would submit that based on Mr. Bell's statements in jail calls, he clearly knew the illegality of machineguns prior to this offense. Despite that knowledge, Mr. Bell chose to obtain switches, repeatedly, and to install a switch on a firearm which he was carrying with him. Mr. Bell and his mother report that his brother was nearly killed due to gun violence. This makes Mr. Bell's decision to possess an illegally modified weapon even less understandable. Since neither Mr. Bell's personal knowledge of the illegality of switches, nor his personal experiences with gun crimes were enough to deter this offense, the government believes that a guidelines sanction is warranted.

The issue of general deterrence is also an important one in this case. Automatic gunfire is an issue which is drastically affecting our communities.[2] With the rise in automatic gunfire comes a rise in injuries, casualties, and danger for everyone. Machineguns, by definition, fire at an incredibly rapid rate. When a gunman pulls the trigger of an automatic firearm, that gun will fire continuously until either, he or she removes her finger from the trigger, or the clip is empty. This means that in Mr. Bell's case, he would only have to hold his finger on the trigger of the Glock 19x for seconds to fire all 50 rounds in the extended drum magazine in his car.

Machineguns are not legal, yet we see a dramatic rise in the frequency of machinegun fire in Minnesota. Therefore, we must infer that these guns are coming into our communities illegally through some black market. This is entirely consistent with what happened in this case. Disguised packages from overseas manufacturers were shipped repeatedly to Mr. Bell's home. A majority of those auto sears have never been recovered and it is unknown at this time where they are or who is in possession of fully automatic weapons now based on those auto sears which were originally shipped to Mr. Bell. A guidelines sentence sends a message to those who would either possess automatic weapons, or those who believe they should supply the means to make fully automatic weapons to others.

---

[2] *See e.g.,* A Summer Under (Automatic) Fire, KSTP News, September 8, 2022, https://kstp.com/kstp-news/top-news/a-summer-under-automatic-fire/. *See also,* Shootings Involving Fully-Automatic Guns Skyrocket in Minneapolis, Bring Me the News, July 29, 2022, https://bringmethenews.com/minnesota-news/shootings-involving-fully-automatic-guns-skyrocket-in-minneapolis.

Taking into consideration the Sentencing Guidelines, as well as the other factors required to be considered under § 3553(a), the United States respectfully suggests that a sentence within the appropriate applicable Sentencing Guidelines range—appropriately reflects the seriousness of Mr. Bell's crime while taking into account his mitigating circumstances, promotes respect for the law, provides a just punishment, and will deter Mr. Bell and others from choosing to lie under oath in order to protect others from prosecution.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant, Nicholas Bell, to a sentence of 21 months' imprisonment, within the appropriate applicable Sentencing Guidelines range.

Dated:     November 14, 2022

Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s Allison K. Ethen*

BY: ALLISON K. ETHEN
Assistant United States Attorney